DB65sotS                          sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          13 Cr. 74 (JPO)

5   KENNETH SOTO,

6              Defendant.

7   ------------------------------x

8
                                          November 6, 2013
9                                         5:15 p.m.

10
    Before:
11
                        HON. J. PAUL OETKEN,
12
                                          District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  KRISTY J. GREENBERG
17       Assistant United States Attorney

18  GEORGE A. FARKAS, ESQ., PLLC
         Attorneys for Defendant
19  BY:  GEORGE A. FARKAS

20  ALSO PRESENT:   U.S. Postal Service Special Agent Cassandra
    Cline
21                  U.S. Dept. of Labor Special Agent Ani White

22

23

24

25

1          (Case called)

2          THE DEPUTY CLERK:  Starting with the government, can I

3  have counsel state their appearance for the record, please?

4          MS. GREENBERG:  Yes, your Honor.  Kristy Greenberg for

5  the government, and with me at counsel table is U.S. Postal

6  Inspection Service Special Agent Cassandra Cline and Department

7  of Labor Special Agent Ani White.

8          Good afternoon, your Honor.

9          THE COURT:  Good afternoon.

10          THE DEPUTY CLERK:  Defendants?

11          MR. FARKAS:  Good afternoon, your Honor.  George

12  Farkas for Ken Soto present in Court.

13          THE COURT:  Good afternoon.

14          MR. FARKAS:  Good afternoon, sir.

15          THE COURT:  We are here for sentencing in this case.

16  Mr. Soto pleaded guilty on June 27th to one count of fraud to

17  gain federal employment compensation which is a class D felony.

18  Before going into the usual things in the guideline calculation

19  and everything, let's talk about where we are given the couple

20  of letters that have come in.

21          The government's submission raises certain matters, I

22  guess, from the witness interviews by the inspector general

23  agent regarding certain things Mr. Soto has said and defendant,

24  in their reply submission, has said that these should not be

25  credited and that, at most, the Court should hold a Fatico

DB65sotS                              sentence

1    hearing.

2          So, I will hear from the government on how you think

3    we should go forward.

4          MS. GREENBERG:  Yes, your Honor.

5          We do not think that a Fatico hearing is necessary.

6    There is not an issue of material fact that's in dispute.

7          In the defendant's reply the defendant doesn't

8    seriously dispute the fact that the defendant was mocking this

9    offense.  On page 3 he may very well have minimized and

10   disrespected the so-called investigation.  That's quoted on

11   page 3.  Also, on page 3, it is possible the defendant could

12   have sought to minimize the seriousness of the case in front of

13   his former colleagues.  Also, on page 3, while the case was in

14   its investigatory stage, the defendant felt there was no real

15   case against him.

16         So, there is no dispute that there were disparaging

17   statements that were made about the case.  Really, what the

18   defendant seems to be disputing in his reply is the timing of

19   when those disparaging statements were made and I would pose to

20   your Honor that there is really no question that at least some

21   of those disparaging statements did occur after the defendant

22   entered his guilty plea.

23         If your Honor looks to Exhibit C which is the

24   interview with Mr. Wiehl -- and I would note that all of these

25   interviews were conducted by two law enforcement agents, not

1   simply Special Agent Cline, but also Special Agent White and on

2   one occasion Special Agent Zumbo -- but, looking at Exhibit C

3   Mr. Wiehl states that two weeks ago, which clearly is after the

4   time of the plea, Mr. Soto visited Mr. Wiehl while he was out

5   on his route and that they discussed the case.  Mr. Soto said

6   that he was going to owe the government $34,000 and that he

7   would only get a slap on the wrist.  His demeanor was joking,

8   Mr. Soto didn't take the case seriously, and appeared not to be

9   worried at all.

10          So, a few things to take from that:  Again, the

11  timing, the fact that the conversation happened two weeks ago

12  after the plea but also, your Honor, if you focus on the

13  number, $34,000.  Now, $34,000 is the amount of the restitution

14  that was indicated in the first version of the PSR.  There is

15  no way Mr. Wiehl would have known that figure if Mr. Soto

16  hadn't told it to him.  That is clear evidence that this

17  conversation happened.

18          I would also point to Exhibit A which is the interview

19  with the Postmaster and where the Postmaster indicates

20  overhearing Mr. Soto speaking to other postal employees.  And,

21  again, he was saying -- again, it is very consistent with the

22  interview with Mr. Wiehl, the same kinds of things that

23  Mr. Soto was only going to receive a slap on wrist and he would

24  only be required to pay back a small amount of money.  The

25  fact, again, that they're talking about what the punishment

DB65sotS                        sentence

1    would be and the amount that he has to pay back, all of that

2    indicates those statements were occurring after the plea and

3    not before.  So, really the issue as to timing, I think, is

4    borne out by the memoranda themselves.

5          The only real issue that's in dispute between the

6    parties is whether or not Special Agent Cline is friends with

7    any of the people that she interviewed, the Postmaster or the

8    postal employees.  One, we would say that's not an issue of

9    material fact, it is certainly not an issue that's worthy of a

10   hearing but the government will proffer that Special Agent

11   Cline is not friends with the Postmaster nor is she friends

12   with the other postal employees that she and other law

13   enforcement agents interviewed.  Special Agent Cline has a

14   professional working relationship with these individuals but

15   nothing more.

16         THE COURT:  She stands by these -- the agents stand by

17   these interview memoranda?

18         MS. GREENBERG:  Yes, your Honor.  I conferred with

19   both Special Agent Cline and separately Special Agent White.

20   They both have confirmed that the accuracy of the statements in

21   those memoranda, that those were in fact the statements that

22   were made to them by these postal employees.

23         However, your Honor, if you were to wish to hold a

24   Fatico hearing, the government would call the Postmaster and

25   those three employees as witnesses.  And what we would expect

1    that testimony to show is that Mr. Soto in fact made those

2    statements to each of those witnesses and they would also

3    testify, if your Honor wanted to hear, that they're not friends

4    with Special Agent Cline though, as a side note, I'm not quite

5    sure how that would matter anyway.  Even if she was friends

6    with him it doesn't necessarily call into question her ability

7    to objectively investigate a case.

8              So, again, we don't think there is a material issue of

9    fact here that is seriously in dispute and we don't think a

10   hearing is necessary.  But, if your Honor were so inclined, we

11   would be happy to call witnesses.

12             THE COURT:  Mr. Farkas, did you want to respond to any

13   of that?  I did receive your letter so I know your view on

14   that.

15             MR. FARKAS:  I know that, your Honor, but I have to

16   address the mischaracterization of what I wrote and what I

17   proffered to the Court.

18             Your Honor, I got involved in this case long before

19   the February arrest of Mr. Soto.  The investigation was

20   ongoing.  My client was always under the belief that the

21   investigation alleged or centered not solely on the fact that

22   he had outside employment which, incidentally, in other reports

23   that I have handed up to the Court in my initial submission,

24   the Postmaster agreed that he basically revealed that

25   information -- not bragged about it but revealed it and I would

DB65sotS                        sentence

1    point to Exhibit A in my initial submission.  But, he was under

2    the impression that the post office was trying to deprive him

3    of compensation because they claimed that his injuries were

4    phony.

5              Now, your Honor, I have to give you a little bit of

6    background on this.  I am not denigrating the seriousness of

7    this offense.  It is a serious offense to lie in an application

8    for compensation but, relatively speaking, compared to other

9    cases that come through the doors of this court, this is a

10   relatively minor case notwithstanding the fact that it is a D

11   felony.  And, again, I underscore that I am not denigrating the

12   seriousness of it.  What I will tell you is that what struck me

13   in the early stages before Mr. Soto was arrested -- and, by the

14   way, the agents well knew that he was represented and we were

15   willing to come in but we were ignored.  I mean, I wasn't

16   hiding somewhere.  I was representing Mr. Soto, there were

17   interviews scheduled out at Kennedy Airport, I said let's go,

18   I'll take him, I'll let him be interviewed.  The bottom line

19   being that Mr. Soto -- Ken -- was under the impression that

20   they're going to charge him with lying about his injury and he

21   says how can they do that when the post office's own doctors

22   and independent medical examinations verified his injury?  It

23   is a stupid, weak case, how can they do that?  And he kept

24   concentrating on the fact that they're denigrating his injury.

25             Now, he did in fact mock the case because he said if

DB65sotS                    sentence

1   they try it prove that I'm going to bring their doctors who

2   said that I do have this on-the-line injury.

3          I would respectfully point your Honor's attention

4   again to Exhibit A which took me a tough time to get because I

5   had to subpoena it from the union people.  There was a

6   grievance filed against Ken, and in connection with that there

7   was a step one interview of the Postmaster and where was it

8   held?  At the post office.

9          Now, your Honor, I did a small bit of research.  The

10  population of Long Valley, according to the latest census, I

11  believe, is 1,879.  I compared that to a couple of areas.

12  There is a little town Ellenville upstate, 4,134.  Your Honor

13  may personally familiar with Beauty, Kentucky which has 457

14  people or the little town of Jeffersonville which has 1,800.

15         So, everybody here knows everybody.  The interview of

16  the Postmaster in which he said materially different things

17  than she says in this report, allegedly said in this report

18  about finding -- about rural carriers not being able to have

19  part-time or light-duty employment, she said something contrary

20  to that in the report.  I believe it is for your Honor to read

21  that.  But, in that context in a hearing at the post office the

22  same place with where these interviews were conducted that he

23  walked out of there -- and I can't quote him, but he basically

24  said this is a lot of BS.  They've got nothing on me and

25  they're just trying to take way my compensation.  And it was in

DB65sotS                          sentence

        that context that he steamed and he stormed that he is going to

        lose his job because they're going to try to prove that he

        doesn't have a legitimate injury.

                Now, the agent who lives in Long Valley is one of the

        1,879 people who we know and if it comes to a Fatico we will

        talk about Mr. Wiehl being a volunteer fireman, about the

        agent's presence at the firehouse -- which has nothing to do

        with postal inspectors -- at a Christmas party this past

        Christmas.  We don't want to go into that.  We don't need to

        belittle this case.

                The bottom line being that Mr. Soto very strongly

        takes exception to the fact -- to the charge that he has

        denigrated or has not given proper respect to the gravity of

        the case.  I believe that the word was -- I quoted it in my

        letter --

                THE COURT:  What about the comments about getting --

                MR. FARKAS:  Unabashed mockery of his offense.

                THE COURT:  What about the comments about getting a

        slap on the wrist.

                MR. FARKAS:  I'm sorry.

                THE COURT:  What about the slap on the wrist comment?

                MR. FARKAS:  He categorically 100 percent denies that.

                Judge, the 4th -- two weeks prior, I guess that would

        be the beginning of October, he did have a conversation with

        the man who ended up getting his route and he was talking and

DB65sotS                          sentence

1    he was mourning -- not mourning, that's the wrong word, but he

2    was bemoaning the fact that $34,000 has to be returned.  That's

3    the figure that I gave him because it was a mistake in the PSR

4    and I never corrected it.  We do know that the correct amount

5    is $38,000.  He did in fact say on various occasions earlier on

6    during the investigation that the case was weak but he

7    categorically denies it and he says to me I will swear on

8    anything the Judge wants me to swear, I don't consider this a

9    slap on the wrist.

10         Judge, the updated PSR which Agent Cline added certain

11   things, she indicated to the probation officer that they're

12   going to move to remove his compensation payment immediately

13   upon sentence.  If you take a look, and we did this as soon as

14   we received the new PSR, if you take a look at the verified

15   income and outflow and his balance sheet verified by the

16   probation officer, he had an income of $9,650 which included

17   $3,630 of Worker's Compensation payment and he's got expenses

18   of $8,610.

19         If the post office is right, that Agent Cline, the

20   friend of Mr. Wiehl is correct and they move to take away and

21   they move to take away his compensation, I have figured by

22   calculator that he will have a negative cash flow of $2,590 per

23   month.  And he knows that he has obligations to pay the $38,000

24   so where he would get off even assuming that this would be a

25   slap on the wrist to somebody who is financially stable to even

1    remotely consider that this is a slap on the wrist.  He

2    categorically, a hundred percent, denies this.

3          Your Honor, I have been doing this for a little over

4    40 years.  I have never seen anything like this.  I can't, for

5    the life of me, believe that the case agent on this case is so

6    inexorably intertwined with the rest of the community and --

7          THE COURT:  Are you saying she's lying?

8          MR. FARKAS:  I'm sorry?

9          THE COURT:  You think the case agent is lying?

10         MR. FARKAS:  I think it is a gross mischaracterization

11   at best.  I believe that it's words put together, it is an

12   opinion.  I think it is a mix of what happened while the case

13   was being investigated.  I don't think that she believes that

14   proper respect was shown to this great investigation.  The

15   man-hours and everything that was put into those videotapes

16   which, by the way, there isn't one minute on those

17   videotapes -- and I sat there -- that disproved this man's

18   injury.  Not a minute.  And that -- and the postmaster was

19   confronted with that and certain assumptions were made.  And I

20   think that it's a personal grudge.  I would rather not go on

21   exploring it but I can.

22         THE COURT:  I don't know that it matters.

23         MR. FARKAS:  Judge, I hope it doesn't matter.  The

24   undercurrent of all of this is, as I set forth in my letter,

25   that this is intended to infuriate you.  This is intended for

DB65sotS                         sentence

```
 1   you to believe that Ken Soto does not take what is about to
 2   happen to him seriously.
 3          While attorneys don't vouch for clients, I've lived
 4   the case with this man for, I believe six months prior to his
 5   arrest; his constant visits to the office, his hearing about
 6   being followed, the investigation.  Judge, Seal Team 6 would
 7   have been proud of this investigation on this kind of a case.
 8   To me it boggles my mind and I think it is meant to dirty him
 9   up and not only that but when we get finished here, the agent
10   knows, the town knows that he is not giving up his fight to
11   continue to collect his compensation because he has his
12   work-related injury and if any of this --
13          THE COURT:  Why has he been getting workers comp until
14   now?  I don't understand.
15          MR. FARKAS:  He has been getting it because he is
16   entitled to it.
17          THE COURT:  Even though he lied on the --
18          MR. FARKAS:  Judge, there is a specific period during
19   which he received compensation.  That's the amount that he has
20   to repay.  For a year and a half he filed reports saying I
21   wasn't working.  He has not denied that he is working.
22          THE COURT:  Now he does admit he is working and he
23   still gets it even though he is working?
24          MR. FARKAS:  Yes, but they're going to look to pull
25   it.
```

DB65sotS                         sentence

1          The charge in the indictment or I should say in --

2     yes, it is in the indictment I guess and it is in the PSR, is a

3     year and a half period and during that period he did, as he

4     admitted and he fully and completely accepts responsibility, he

5     admitted to lying about having outside work.  Now, it is

6     interesting because the postmaster, in an interview back in

7     2011, also states that she knew that Mr. Soto volunteered as a

8     highway auxillary officer.  She considered that work.  He did

9     not.  But he did not keep that from her.  But they lumped that

10    in with the addition of lying.

11         Your Honor, all I'm asking you is, please, with your

12    experience, don't buy into this.  We can have a Fatico if you

13    want.  We can go ahead.  I happen to know, based on the little

14    research that I did, Long Valley Post Office employs eight to

15    nine carriers three to four clerks, the postmaster and three

16    associates and who comes up and says slap on the wrist, the

17    case is weak, I only have to give back a little bit of money?

18    Mr. Wiehl, Mr. Wiehl who lived around the corner from Agent

19    White until he got divorced and moved to another part.

20         THE COURT:  How does the fact that even if they do

21    know each other, how does that fact make the agent likely to

22    have lied?

23         MR. FARKAS:  The way this factors in, Judge, and I

24    make it a point not to repeat what I have submitted in writing,

25    is the following:  I find it strange from a trial lawyer's

1    standpoint that the points that were made by Mr. Wiehl that he

2    stated he will only get a slap on the wrist and that the case

3    was weak and it should have been dropped, those are the key

4    points of his statement that he made -- that allegedly Mr. Soto

5    made in a conversation.  Okay?

6           About a week or so later the agents interview the

7    postmaster.  Now, she can't say that Mr. Soto spoke to her

8    because he can't speak to her, she's the cause of all of his

9    troubles.  That's in the report.  That's undisputed.

10          THE COURT:  Doesn't the postmaster say that he said he

11   told people he wouldn't have to pay anything back or just pay a

12   small amount back?

13          MR. FARKAS:  No.  The way I read the record is that

14   what she stated a week later is not that he said anything to

15   her but that she overheard Soto say that he was going to get a

16   slap on the wrist and that the case was weak.  Word for word

17   what Mr. Wiehl said a week and a half ago to the agent.

18          Now, the postmaster now overhears this?  I don't

19   believe it is worthy of comment, Judge.  If we were talking

20   about a major, major case looking at guidelines that are very

21   large I would fight this to the bitter end.  I'm asking you to

22   take under consideration the fact that I have lived this case

23   with Mr. Soto, he does not consider anything about a slap on

24   the wrist, he knows exactly that he has to pay things back.  He

25   may, if the agent is correct, have to start dealing with a

DB65sotS                              sentence

1    negative cash flow.  It is pointed out in the updated PSR in

2    their addendum.  Nothing could be further from the truth.

3            I am not comfortable calling an agent a liar.  I'm not

4    comfortable calling an agent exaggerating.  I am not

5    comfortable doing any of this and this wouldn't have happened

6    if there was a mischaracterization -- that I know to be a

7    mischaracterization that absolutely shocked me about Kenneth

8    Soto.  I have never heard of anything remotely like this.  The

9    man has been in my office regularly crying how am I going to do

10   this?  I know I have an obligation.  I have to get a third job.

11   And the constant words coming out of him is look at what

12   they're doing, they're screwing me over even with the

13   compensation even though they know that I have the injury, even

14   though three doctors employed by the post office have verified

15   that.

16            THE COURT:  Okay.

17            MR. FARKAS:  Judge, I don't know what to add.  I'm at

18   a loss.

19            THE COURT:  Well, I don't know what.  I mean, if you

20   want to address any of that?

21            MS. GREENBERG:  Yes, your Honor.

22            It is hard to even just sit here without jumping up at

23   various points of that.

24            The government strongly disputes that Special Agent

25   Cline has done anything improper.  Based on what I have heard

DB65sotS                        sentence

defense counsel just say, she has a personal grudge against the

defendant and an axe to grind based solely on the fact that she

lives in the same town?  It is absurd.  She was assigned this

case because that's her territory.  It is not like she sought

this case out against defendant, it was randomly assigned to

her because that's the territory she works in.

      The other charge laid at her door is that apparently

the Seal Team 6 would be proud, they did a thorough and

meticulous investigation and therefore that means they have

some vested interest it persecuting the defendant.  No.  It

means they did their job.  That's all it means.

      And, if anything, there is a reason why these

investigations, just to provide the Court with a little bit of

background, are as detailed and meticulous as they are.

Federal Worker's Compensation fraud is endemic in the United

States Postal Service.  I understand defense counsel is

entitled to his view that this is not a major case.  The Postal

Service and the Department of Labor in our office beg to

differ.  It is a big case.  It is important.  Our office

currently has between 6 to 12 active matters of these kinds of

federal Worker's Compensation fraud before us.  The fraud is

extremely hard to detect and it is even more difficult to

prove.  It is hard to prove beyond a reasonable doubt that an

employee did not have an injury or was not working somewhere

where they say they are.

DB65sotS                              sentence

1          So, a huge effort is undertaken by the postal service

2     and Department of Labor in investigating these cases and the

3     investigation here against Mr. Soto is no different than the

4     other investigations that are in our office.  There were

5     undercover operations, there is surveillance to see where

6     they're working otherwise, subpoenas for business records to

7     determine really if this person is actually injured or actually

8     working somewhere else.  This is no different.  Nobody is

9     persecuting Mr. Soto.

10         Another reason why they do the meticulous and thorough

11    work that they do as exceptional public servants that they are,

12    the reason they do that is because these postal employees, just

13    like the defendant, just keep fighting even after they're

14    already convicted.

15         So, you heard, and it is in the defendant's reply,

16    that even though he is convicted in federal court of fraud, he

17    is still fighting to keep his compensation and he is still

18    fighting to keep his job.  He says he maintains the treatment

19    by his employer was unfair and it was wrong.  He states that he

20    intends to continue to fight tooth and nail to be compensated

21    for his injury and he is going to even pursue arbitration to

22    get his job back.

23         I mean, this is not accepting responsibility.

24    Accepting responsibility is dealing with the consequences of

25    your actions.  If you lie on forms about whether or not you

DB65sotS                              sentence

1    have other employment, you shouldn't get to keep that federal

2    job that you lied about repeatedly.  And you certainly

3    shouldn't get to keep cashing your compensation checks.  I mean

4    he is still, to this day, cashing compensation checks and the

5    way that the system works with Department of Labor is that not

6    only does he have to be convicted but he has to also be

7    sentenced before they can discontinue that process which,

8    again, the defendant says he still plans to fight.

9             THE COURT:  But that's all based on his idea that not

10   about this particular offense but on this idea that he really

11   is injured.  Anyone questioning his actual injury, that's a

12   separate issue.  That's not what I'm sentencing him for but it

13   seems like that's what he is fighting, is this idea that he

14   wasn't really injured, right?

15            MS. GREENBERG:  Well, maybe fighting that separate

16   issue but putting aside whether or not he was injured, the very

17   fact that he lied on the forms about whether he had other

18   employment, that's enough that he should not be compensated and

19   therefore he would not be receiving any more compensation after

20   he's sentenced.

21            THE COURT:  Okay.

22            MS. GREENBERG:  Just to speak very briefly on the

23   alleged injury.

24            Again, the constant theme is that he is being

25   persecuted but the postal service cannot find him another

DB65sotS                          sentence

1    position to deal with this alleged injury.  By no accounts is

2    the government conceding that this is a legitimate injury and,

3    again, I understand that's not what you are sentencing him on

4    but we do have serious doubts as to whether or not this injury

5    to his forearm is real.  He expects us to believe that what he

6    can't do is this, making this motion, just sorting mail in a

7    repetitive way yet -- and these were produced in discovery and

8    I'm happy to hand them up to the Court -- they're photos of him

9    that were taken where he's lifting heavy boxes.  They're very

10   large boxes that appear heavy.  He is operating a snow blower.

11   He is using his forearm to scrape snow off of a windshield.  It

12   just defies logic to believe that this man has an injury -- a

13   legitimate injury that means he can't sort mail but he can

14   engage in those sorts of tasks.

15         THE COURT:  Sometimes tendonitis is a very specific

16   axis movement and you can do lots of other things; you can lift

17   a box but you can't actually do this one specific thing.  I

18   mean that's why typing in a certain way can lead to tendonitis.

19   I haven't researched this but I'm just saying in terms of

20   common sense.  Isn't that true?

21         MS. GREENBERG:  Well, I would say as common sense if

22   you did have this kind of injury and you were so anxious to get

23   back to the postal service certainly aggravating an injury with

24   this kind of strenuous activity on a fairly regular basis is

25   not -- you wouldn't want to exacerbate or risk exacerbating any

DB65sotS                          sentence

1    sort of legitimate injury by engaging in these kinds of

2    activities.

3            THE COURT:  Okay.

4            MS. GREENBERG:  But, I mean, at the end of the day I

5    guess my point being this case is not about the Postmaster and

6    it is not about Special Agent Cline, it is about the defendant

7    and the seriousness of his offense and that's what we ask your

8    Honor to focus on, not to be distracted by these issues about

9    where the Special Agent lives, who she's friends with.  It is

10   utterly irrelevant and just a mere tactic to try and distract

11   you from the fact that he cheated the system, he bragged about

12   cheating the system, and then when he got called out on

13   bragging about cheating the system he sought to assign blame to

14   anybody he could.  It is just simply not what is at stake in

15   the sentencing.  We ask your Honor to focus on the offense and

16   focus on the defendant's commission of it.

17           THE COURT:  Okay.

18           MR. FARKAS:  Your Honor, may I be very briefly heard?

19           THE COURT:  Yes.

20           MR. FARKAS:  The indictment and the charge was very

21   specifically drawn in this case.  He lied about work.  He did

22   not lie about his injuries, he wasn't accused of lying about

23   his injuries.  He lied about work.  That was explained to him

24   by me in the office and it resulted in the guilty plea.  Yes, I

25   did do that.  That's what he pleaded guilty to.  The fact that

DB65sotS                          sentence

1    he is going to pursue his right to be compensated for an

2    on-the-job injury, it may be fighting windmills.  It may be

3    that his union that is setting up the arbitration hearing, it

4    may be hopeless.  I put that out there.  I don't know.  But, I

5    do know that it is the injuries that he is fighting and then

6    just one word about how I believe that some of the

7    characterizations and one of the submissions by Ms. Greenberg

8    in her letter how she swallowed, in whole, the concept that

9    rural carriers do not have light duty work available to them.

10   Apparently one of the exhibits, a union rep said that he told

11   Mr. Soto that light duty is not available for rural carriers.

12   His union told him completely the opposite.

13            Ms. Brookens, the Postmaster, before she was

14   interviewed on November 1st, stated in an interview on December

15   28th, 2011 when she was asked by the union rep:  "When the

16   grievant first went out on leave and you received his medical

17   limitations, did he inquire with you about finding work within

18   his limitations?  If so, what did you tell him?"

19            She said:  "Not initially" -- by the way, this is in

20   her handwriting -- Not initially, but after seeing the doctors,

21   he did.  There was no limited duty work available in this

22   office."

23            "He stated that you told him that you had no work and

24   that he should contact someone else.  Who was that person?"

25   And then she says who that person was.

DB65sotS                              sentence

1          That doesn't sound like the law says or the rules say

2    that rural carriers are not entitled to limited duty.  It never

3    happened, it is not true, it is a part for another forum and I

4    happen to agree with Ms. Greenberg we should not be distracted

5    by all of these things that I never brought up until I received

6    her sentencing submission.

7          THE COURT:  Okay.

8          MR. FARKAS:  Thank you.

9          THE COURT:  Thank you.

10          I think I'm going to go ahead with some of the

11    preliminary matters that I didn't cover yet which is first I

12    want to confirm that I received everything I should have.  I

13    have reviewed, in preparation for today, the presentence report

14    with an addendum and sentencing recommendation.  Probation

15    recommends, I believe it is three years of supervised release

16    with a six-month home detention condition.  I have received a

17    submission by defense counsel, Mr. Farkas, dated October 22nd

18    with several letters from colleagues and friends of Mr. Soto,

19    the government's submission of November 4th and defendant's

20    reply of November 5th and the attachments to those.

21          So, I think that's everything, right?  There hasn't

22    been any other submission besides those?

23          MS. GREENBERG:  No, your Honor.

24          THE COURT:  Mr. Farkas, have you read the presentence

25    report and discussed it with your client?

DB65sotS                          sentence

 1              MR. FARKAS:  We have, yes.

 2              THE COURT:  And, Mr. Soto, have you read the

 3    presentence report and discussed it with Mr. Farkas?

 4              THE DEFENDANT:  Yes, sir.

 5              THE COURT:  Ms. Greenberg, have you reviewed the

 6    presentence report?

 7              MS. GREENBERG:  Yes, your Honor.

 8              THE COURT:  Are there any objections to the

 9    presentence report?

10              MS. GREENBERG:  No, your Honor.

11              MR. FARKAS:  There are no exceptions, Judge, except

12    that we differ on the recommended sentence and we ask that you

13    impose the sentence that we recommended.

14              THE COURT:  Okay.

15              I hereby adopt the facts set forth in the presentence

16    report as my findings of fact.  The starting point, in

17    determining a sentence, is the sentencing guidelines.  Although

18    the Court is not required to follow the sentencing guidelines I

19    am so required to consider the applicable guideline range.  It

20    is the starting point on the lodestone in any sentencing

21    decision and so I would need to start by making sure I have an

22    accurate calculation of the guidelines.  And, I believe the

23    calculation in the presentence report is consistent with the

24    one in the plea agreement.

25              MS. GREENBERG:  It is, your Honor.

DB65sotS                              sentence

1           THE COURT:  In this case.

2           MR. FARKAS:  Yes.

3           THE COURT:  Thanks.

4           Based on my independent evaluation of the sentencing

5    guidelines and my understanding that the parties don't object,

6    I accept the calculation in the PSR using the guideline manual

7    in effect on November 1st, 2012; the base offense level is 6.

8    Because the loss amount is $34,000 -- actually, it is the

9    $38,000 number -- $38,000 plus there is an increase of six

10   under the guidelines.  For acceptance of responsibility there

11   is a reduction of two points so the total offense level is 10,

12   the Criminal History Category is I because there is no prior

13   offenses and therefore the guideline range is 6 to 12 months

14   and a recommended fine under the guidelines of $2,000 to

15   $20,000.

16          As I said, I have read all of your submissions and we

17   addressed the recent issues from the last submissions, but if

18   defense counsel wants to add anything else that we haven't

19   covered, you are welcome to but maybe you have already covered

20   everything.  And then I will give Mr. Soto a chance to speak,

21   if he would like.

22          MR. FARKAS:  Your Honor, the only thing I didn't state

23   which is the obvious:  That all he is looking to do is to work,

24   work hard, make money, pay back this money.  I don't believe

25   that home confinement is necessary even though I understand

DB65sotS                              sentence

 1    that home confinement can be adjusted for him to go to work.

 2              This is a man who is broken and I think that knowing

 3    his obligation to repay the money, coupled with a period of

 4    probation which is what it is going to take him to repay this

 5    money, addresses each and every element of the purposes of

 6    sentencing.

 7              That's all.  Thank you, your Honor.

 8              THE COURT:  Thank you.

 9              Mr. Soto, if there is anything you would like to say

10    today, you may.  You are not required to speak, but you may.

11              THE DEFENDANT:  Yes, your Honor.

12              Your Honor, I have and continue to accept

13    responsibility for lying about work when I applied for

14    compensation.  It was wrong and it was a mistake for which I

15    have and will continue to pay for dearly.

16              I am begging your Honor to accept the fact that my

17    injury was real and verified by independent medical

18    examinations.  I always wanted to work and never wanted to go

19    out on compensation.  I never claimed fraudulent injury and

20    never wanted compensation that I wasn't entitled to.  Even

21    though I fully accept responsibility for the wrong that I

22    committed, I cannot help but feel betrayed by my employer for

23    not finding suitable work for me.

24              I will take steps to try and cut off my benefits to

25    which I believe I am rightfully entitled.  As I stand before

1    you, I simply don't know how I will make it but I will

2    certainly try.  I would rather not dignify the statement

3    attributed to me by the close friends of Agent Cline who just

4    came out of the woodwork.  All I will say is that I never said

5    that I will get a slap on the wrist or anything resembling

6    that, nor did I characterize the money that I have to repay as

7    small.

8            Please look at my income and resources.  Does $38,000

9    sound small to a person with my resources?  These people were

10   never my friends.  The last thing I would do is have important

11   conversations with them.

12           I stand ready to accept whatever sentence you give me.

13   I only pray that you are not influenced by the last minute

14   allegations about my attitude; they're all just lies.

15           Thank you.

16           THE COURT:  Thank you.

17           Ms. Greenberg, is there anything you would like to say

18   other than what we have already covered?

19           MS. GREENBERG:  Yes, your Honor.

20           A guideline sentence here of 6 to 12 months'

21   imprisonment is absolutely justified in this case one because

22   there is need for just punishment.  There have to be real

23   consequences to this offense and as you heard the defendant

24   say, he is still fighting for his job, still fighting for

25   compensation.  Whether or not he says now that the restitution

amount is really something that's a lot for him that what he is

saying to his attorney and what he is saying now is just simply

not what he was saying to other people.  Clearly he was saying

to them that this didn't mean anything to him and obviously

what you tell others and what you are telling your attorney are

two different things.

         There is a need here for actual prison time to feel

some just punishment.  I would also point to deterrence.  As

both defense counsel and I have noted, this is a small

community, this is a small post office, and these cases where

you can actually successfully prosecute someone for Worker's

Compensation fraud, they are difficult to do.  So, when

somebody is actually successfully prosecuted and there is no

real consequence, it sends exactly the wrong message to the

other postal employees about what the consequences of this

offense are; particularly not just to that small community but

also to the postal union and to workers beyond that community.

There is a real need for deterrence here to other postal

employees to show that this kind of fraud is not tolerated and

it is not okay and there are serious consequences to committing

it in a system that is, frankly, bleeding.

         Also, looking at the history and characteristics of

this particular defendant, he worked for the post office for

over a decade.  He was a supervisor.  He also worked at the

NYPD as an auxillary police officer.  This is somebody who

1   should have known better than to commit this kind of fraud.

2           Finally, most importantly, a guideline sentence here

3   is important to promote respect for the law.  You can't cheat

4   the system, brag about it, and then when you are called out

5   blame everybody else associated with it and not have to face a

6   guideline sentence.  He blamed the system for why he has

7   committed this fraud in the first place because they didn't

8   give him a position he wanted.  He blamed them for

9   investigating him too strenuously, in his opinion, for his own

10  fraud, and then he blames them for investigating his statements

11  about it after the fact where he mocked it.

12          You know, he needs to stop assigning blame to other

13  people and accept responsibility for what he has done and a

14  guideline sentence would send that message home.

15          THE COURT:  Can I ask you also, the restitution is

16  $38,304, right?

17          MS. GREENBERG:  That's correct.

18          THE COURT:  Is the government also seeking forfeiture

19  in the same amount?

20          MS. GREENBERG:  No, your Honor, just restitution.

21  And, I do have a restitution order to hand up to your Honor.

22          THE COURT:  So the forfeiture is dropped?

23          MS. GREENBERG:  That's correct.

24          THE COURT:  In preparing to sentence the defendant I

25  have considered the presentence report, probation's

DB65sotS                              sentence

 1   recommendation, the written and oral statements of defense

 2   counsel and the defendant and the government and I have

 3   considered each of the factors set forth in 18 U.S.C. 3553(a)

 4   which you are all familiar with.  Even if I don't mention them

 5   specifically I have considered each of them in this case.  The

 6   Court is required to impose a sentence that is sufficient but

 7   not greater than necessary to comply with those sentencing

 8   factors.

 9             Starting with the nature and circumstances of the

10   offense, this offense is a serious offense.  It is not the most

11   serious offense but it is a serious offense; it is hard to

12   track down and it does happen, and in this case I believe that

13   the offense was undertaken deliberately and knowingly.  The

14   defendant defrauded the government by lying about outside

15   employment to obtain federal worker compensation benefits.

16   That's what he's being sentenced for.  The issues about whether

17   injuries are real, that's a separate issue and that's not what

18   he pleaded guilty to.  But, what he did plead guilty to is a

19   real crime, it is a serious crime.  He also took steps to avoid

20   being detected the way the checks for his other business.  The

21   way they were directed to be paid out indicated that he was

22   specifically avoiding being caught.  And so, I think there is

23   real culpability here.  He ultimately obtained over $38,000

24   from the government that he wasn't entitled to.

25             Defense counsel argues that he was really just trying

1   to work but the offense wasn't about work, as I said, it was

2   about lying on the application and knowingly taking steps to

3   cheat the government out of money with those lies.

4           I also need to consider the history and

5   characteristics of the defendant.  The letters do indicate that

6   he is a good person in many ways; I think he has worked hard

7   and wanted to work and wants to work and also that he has

8   volunteered extensively including with the auxiliary police.

9           There is this issue about whether he either earlier or

10  more recently made light of this offense to which he pleaded

11  guilty, whether he was expecting a slap on the wrist.  I think

12  it is more likely than not.  I'm not exactly sure what was

13  said.  I think it is more likely than not that he did make some

14  comments suggesting that he was taking it a little bit lightly.

15  However, I have determined that I don't need to have a Fatico

16  hearing, I don't need to make specific findings on that because

17  based on all of the factors I'm persuaded that a guideline

18  sentence, a sentence at the low end of the guidelines is

19  appropriate for the other reasons whether or not he made those

20  specific statements.  So, I don't think you need to have those

21  findings.  I think in this case that this is a guidelines case.

22  I don't think the loss amount overstates the offense.  I don't

23  think it is a case where there is any reason to vary from the

24  guidelines.

25          Also, I agree with the government that general

DB65sotS                                    sentence

1    deterrence and specific deterrence and the need for just

2    punishment and respect for the law call for a sentence at the

3    low end of the guidelines range here.  People need to know that

4    this is not going to be treated lightly and is going to be

5    taken seriously.

6              And so, for all of those reasons I intend to impose a

7    term of six months' imprisonment, two years supervised release.

8    I am not going to impose a fine.  I don't think he is really in

9    a position to pay one and I think the focus should be on the

10   restitution order.  There is a $100 special assessment which is

11   mandatory.

12             Does defense counsel know of any legal reason why

13   sentence may not be imposed as so stated?

14             MR. FARKAS:  Well, we would ask that you give an

15   opportunity for him to surrender if you are going to impose

16   imprisonment.

17             THE COURT:  I will set a surrender date.

18             I assume there is no objection to setting a surrender

19   date?

20             MS. GREENBERG:  No, your Honor.

21             THE COURT:  Okay.  Is December 30th, or we can do

22   January 6th.  Is January 6 okay?

23             MS. GREENBERG:  That's fine with the government.

24             THE COURT:  The defendant will surrender --

25             MR. FARKAS:  Your Honor, I understand that you have

DB65sotS                            sentence

1  pronounced sentence and I -- and I know what my role is and I

2  know what I'm supposed to accept but I am asking your Honor to

3  consider home confinement as a substitute for the imprisonment

4  only so that he can work.  And he can't work if he is going to

5  be jailed for six months.  The restitution issue is going to be

6  even more difficult and he honestly believes that he has this

7  duty to make the restitution and he simply can't do that if he

8  is in prison.

9            THE COURT:  He will have to do it after.

10           MR. FARKAS:  I'm sorry?

11           THE COURT:  He will have to do it after.  I have

12  determined, for the reasons that I have said, that a guideline

13  sentence is appropriate.

14           Does the government have any objection or know of any

15  legal reason why it may the be imposed?

16           MS. GREENBERG:  No, your Honor.

17           THE COURT:  Mr. Soto, would you please stand?

18           It is the judgment of this Court that you be committed

19  to the custody of the Bureau of Prisons for a period of six

20  months.  Following release you will be placed on supervised

21  release for a period of two years with the following

22  conditions:

23           The following conditions are mandatory:  The defendant

24  shall not commit another federal, state or local crime.  The

25  defendant shall not illegally possess a controlled substance.

DB65sotS                              sentence

1    The defendant shall not possess a firearm or destructive

2    device.  The defendant shall refrain from any unlawful use of a

3    controlled substance.  The defendant shall submit to one drug

4    testing within 15 days of placement on probation or supervised

5    release and at least two unscheduled drug tests thereafter, as

6    directed by probation.

7         The defendant shall cooperate in the collection of DNA

8    as directed by probation.  The standard conditions 1 through 13

9    are imposed with the following special conditions:

10        The defendant shall provide the probation officer with

11   access to any requested financial information.  The defendant

12   shall not incur any new credit charge or open additional lines

13   of credit without the approval of probation unless the

14   defendant is in compliance with the installment payment

15   schedule.

16        The defendant shall submit his person, residence,

17   place of business, vehicle or any other premises under his

18   control to a search on the basis that the probation officer has

19   reasonable belief that contraband or evidence of a violation of

20   the conditions of release may be found.

21        The search must be conducted at a reasonable time and

22   in a reasonable manner.

23        Failure to submit to a search may be ground for

24   revocation.  The defendant shall inform any other residents

25   that the premises may be subject to search.

DB65sotS                                    sentence

1          The defendant shall not volunteer, on any level, with

2     any law enforcement agencies during supervised release without

3     notifying such agencies of his status as a federal supervisee

4     and receiving approval from probation.

5          The defendant is to report to the nearest probation

6     office within 72 hours of release and the defendant shall be

7     supervised by district of residence.

8          It is ordered the defendant will pay a special

9     assessment of $100 due immediately.  It is further ordered the

10    defendant shall make restitution to the Clerk of Court for

11    disbursement to the Department of Labor in the amount of

12    $38,304.  Payment shall be addressed to the clerk including

13    defendant's name and corresponding docket number sent to 500

14    Pearl Street.  Restitution payments issued to the clerk shall

15    be addressed to the U.S. Department of Labor OWCP and include

16    defendants' name and corresponding docket number to the mailing

17    address of the U.S. Department of Labor.

18         The restitution shall be paid in monthly installments

19    of $1,250 over a period of supervision commencing 30 days after

20    release from incarceration.

21         Defendant shall notify the U.S. Attorney within 30

22    days of any change of mailing address or residence that occurs

23    while any restitution remains unpaid.

24         I am not going to impose a fine because I believe that

25    he doesn't he is not in a position to pay one.  And, there is

DB65sotS                              sentence

1    no forfeiture.

2              I'm setting a voluntary surrender date of January 6,

3    2014 before 2:00 p.m. to a facility designated by the Bureau of

4    Prisons.

5              Mr. Soto, you have a right to appeal from your

6    conviction and sentence except to whatever extent you have

7    validly waived that right as part of your plea agreement.  If

8    you are unable to pay the costs for appeal you may apply for

9    leave to appeal in forma pauperis.  Any appeal must be filed

10   within 14 days of the filing of the judgment of conviction.

11             I direct that a complete copy of the presentence

12   report be provided to the Bureau of Prisons and the sentencing

13   Commission and that counsel on any appeal have access to the

14   report.  The clerk will prepare the judgment and see to it that

15   the required documentation is sent to the Sentencing

16   Commission.

17             Are there any underlying counts to be dismissed?

18             MS. GREENBERG:  No, your Honor.

19             THE COURT:  Is there anything further?

20             MS. GREENBERG:  Nothing from the government.

21             MR. FARKAS:  No.

22             THE COURT:  Okay.  Thank you.

23                             o0o

24

25